Victoria's Secret Direct v. U.S. and Lerner New York v. U.S., Cases 2013-1468 and 2013-1469. The U.S. Department of Justice has been investigating the murder of a U.S. citizen.  The U.S. Department of Justice has been investigating the murder of a U.S. citizen. May it please the Court, I'm Frances Hadfield on behalf of Victoria's Secret and Lerner New York. We discussed with counsel that we're going to argue these cases together with the Court's indulgence. So this case involves a class of garments called shelf bra camisoles. They are marketed as bra tops by Victoria's Secret Direct and body shapers by Lerner New York. We believe that the trade court made two errors of law in reaching its decision to classify these products under Heading 6114. The garments at issue feature a shelf brassiere and a camisole shell in a single garment. And we believe that Chapter 61, Note 2a precludes the classification of articles of Heading 6212 in Chapter 61. And so the first error that the trade court made was to erroneously expand the scope of Heading 6114 to include support apparel that contain a shelf brassiere. Is your argument that any article that provides as part of its functionality support kind of like a brassiere does would therefore fall under the other similar articles part of the brassiere code? No. We would have to do an analysis of whether or not support was the specific function of the garment. And if the specific function of the garment is support, then it would fall under 6212 so long as pursuant to avenues and leather. There's no inconsistent purpose. I guess I'm finding that to be a bit confusing. Are you saying when you say the specific function of the garment, it makes it sound like you are acquiescing to the idea that the garment could have a primary function and that it is the job to identify the primary function. If the primary function is support, it falls under that header. If the primary function is not support, it doesn't. Let me be clear. Under ad justum generis, you have to look at the heading and see what is the unifying factor among all of the listed articles in the heading. In our case, we have brassieres, corsets, and girdles. And the court found that the unifying characteristic... And suspenders. And suspenders and girders. So the court found that the unifying characteristic is support. So long as support is in your article, your article is, to begin with, ad justum generis, with those articles in the heading. But what if... I guess here's the problem I'm having. I'm kind of glad you're a gal as opposed to a guy. So sometimes you buy an evening gown, right? And it's backless. And so it actually has cuffs built into the evening gown, right? There's no doubt that the purpose of those cuffs is to avoid the need for a brassiere because it's got an open back. You don't want to have your bra strap showing. Certainly. Does that suddenly now fall into the bras, girders, suspenders category because it is an evening gown? Clearly, it ought to be in the evening wear category, assuming there is such a thing. But, I mean, just because it has additional functionality, there's no question the purpose of those cuffs is support, right? That's the only reason they're sewn into the evening gown. But does that suddenly make it in other similar articles to brassieres, suspenders, girders, et cetera? No. So under avenues and leather, you determine you have support. And then you look for whether or not there's a more specific purpose that's inconsistent with that heading. And I think it would be fair to say that the inconsistent and more specific purpose of the article you just described, and I would have to see it, you know, I'm speculating not seeing this, is that it would be a dress, not the sewn in. Okay. So then what you have, though, accepted, because I have to be honest with you, the word inconsistent really troubled me in avenues and leather. It didn't seem like, quite frankly, the right word. When I think of the word inconsistent, I mean at odds with, right? Sort of the opposite of, you know. And inconsistent didn't seem like the right word because they actually cited SGI and totes right afterwards, neither of which had inconsistent purposes. They had different primary purposes, you know. And so inconsistent sort of, while that is the word that the court used by its own examples that followed the word, it seemed to not really hold it to the sort of formal meaning that it has to have, a purpose that is sort of at odds with the support purpose. Well, and again, you know, let's go back to our product. So our product, we first determined in very lengthy findings the fact that we had support, the item that unified the heading. And the district court made very specific findings to that effect, correct? Yes, and not only that, they had a specific heading that was principal findings of fact regarding support. So then they correctly cited avenues and leather where they talk about there had to be a more specific primary purpose and the inconsistency language that you're somewhat troubled by. But then they never went farther other than to say that the two purposes of our garments are coverage and support. They didn't say support was the primary. In fact, he said it is not the, and he underlined the, potential characteristic. And avenues does use the word primary characteristic. But that actually isn't the Adjustment to Narrow Standards that's set out in avenues. In avenues in 99, what they said is that you have to determine first what the unifying characteristic is, and second whether or not your product falls or has that unifying characteristic. So we determined that first part. And then there's nothing that says coverage is an inconsistent purpose. But it says primary characteristic, right? It says it has to be primary. A more specific primary purpose that's inconsistent was the exact language of avenues and leather. So in our instance, we have two purposes. We have support and we have coverage. And coverage isn't an inconsistent purpose when you think about brassiers, girdles, and corsets. All of them cover a portion of the body. And certainly to the extent that a corset can be worn similar to your evening wear discussion, you have corsets that are evening wear that are worn on the outside. You have brassiers that are worn as outerwear. So coverage cannot be an inconsistent purpose to the articles of Heading 6212. And we don't have a finding that says that coverage is an inconsistent purpose. And really these are- What do you think inconsistent- I mean, we're not here to interpret an interpretation, but what do you think in avenues in leather inconsistent could possibly have meant? Not only the cases that it cited don't involve inconsistency in the sense of taking away from the function, the function of the listed items, but neither does the particular product at issue in avenues. Well, I think perhaps if we look at the other case law, we might find some guidance from that. So when you look at SGI and sports graphics, we have other cases where they found that the more specific purpose, for example, SGI was food. There was a food purpose. Storage versus carrying stuff, and those are perfectly consistent. Which was a more specific purpose than the luggage provision, which I believe was also 4202, storage of that nature. So they found it was a more specific heading. Here we have a residual provision. Other knitted garments- It seems to me this is important. There were separate analyses. When you move from the world of the TSUS in sports graphics to the world of the HTSUS in SGI, basically same case but different standards. You take one at a time the question, is it in this heading? Is it in this other heading? What rule is there for making a choice if it's in both? Both those cases, as did Toadst said, just on the question, is it in the carrying case heading? 4202 I think it is or something, and its predecessor under the TSUS. It's not, and that was not a determination made by saying it's not in this one because it's more in this one. That was a second step. So it's just this question, how do you decide whether it's in the particular heading? I guess it seems to me the food storage purpose was not inconsistent in any sense other than it had a significant primary use that tended to take away from its character as a carrying case. You seem to be arguing a bit more than the old TSUS standard. And I think what we really have to rely on is the GRIs for this. Right, but it seems to me what you're trying to do is take avenues in leather and transform it into a general doctrinal principle, which JVC in rejecting the more than principle said, we don't do that anymore. We used to do that. We don't do it anymore. The only question is, what is the unifying characteristic or to use avenues in leather, essential characteristic, by which I think it just meant the defining unifying characteristic of an item in any particular list, depends on the particular list. There's no particular reason that every single heading should have exactly the same analysis. And some lists have an inherent limitation built into them, and some don't. It's a class for coming. Right. So why is this particular category not one that contains within it an inherent limitation that the overwhelming, if not exclusive, ordinary use of the product has no function but support? You can't say that about this product. We don't have any findings to that effect, Your Honor. There's nothing in the record that says that. Don't we have findings and essentially overwhelming testimony? This is a perfect dual use product. We don't have anything regarding dual use. What we have is overwhelming testimony regarding the support. So let's harken back to the design, marketing, and sale of this. We have a garment. It's sold as an outer garment. That is not true, Your Honor. In Lerner, if you look at the floor plans that we have. There's one distinguishing fact between the two cases. The Lerner stuff has this one passing sentence about sold in intimate apparel. That's correct. I want to put that aside for a minute because we don't have any counterpart to that in Victoria's Secret. Well, let's look at Victoria's Secret. It's sold under bra tops. We had testimony of the fact that it's night shirt, sleepwear, and sold under its own drop-down heading online. And Victoria's Secret is a well-known intimate apparel provider. When they're marketing something as a bra top, this wasn't marketed as a shirt that happens to have a bra in it. This had its own drop-down specific to the product with a built-in shelf bra providing support. That was the marketing of this good. Does that answer your question? You said it had its own pull-down, so it wasn't under the pull-down for bras, and it wasn't under the pull-down for T-shirts. That's correct. But doesn't that actually dovetail into Judge Tarano's point, which is it's a unique animal with a dual functionality. It really isn't like bras. It may not be like T-shirts either, but it's not like bras. And that's an important point. And it has to mean, if we're talking about a similar article, it has to be something different than brassieres. If it was a brassiere, then the AO nominee classification would encompass it in all forms. So when we're talking about articles that are similar to the listed items, it has to be by its very nature different. It can't be those exact things. It's not going to fall under the bra drop-down. It's not a brassiere. And otherwise, we would have argued, for classification purposes, it would have fallen under there, pursuant to the explanatory notes, pursuant to the named thing. What we said is the uniting feature of those articles is support, and our garments are similar to those articles. Different. Why isn't the uniting feature support and in ordinary use pretty much nothing but support? That is that the uniting feature here, and I think this is true of all of the items in here, comes with a ceiling. It's not just a floor. Support plus anything is not covered. It stops being one of these things if it turns into an evening gown, which is going to provide support. I'm going to disagree, and let's take corsets. Corsets can be used and are used as formal evening wear. The fact that it's an AO nominee corset that's used as outerwear doesn't preclude it from class. That's right. I tried to put quite a lot into my word ordinary. There are obvious circumstances. Madonna wears the bra on the outside. The rest of us do not do this. This is not the ordinary use. The same would be true with corsets. How about suspenders and garters? Suspenders are worn as outerwear. They're not worn hidden. I'm sorry. I'm not talking about outerwear or underwear. I'm talking about support and pretty much nothing else in ordinary use. That's true of suspenders. I don't think people wear suspenders. It wasn't through evidence. I mean, when I look at the district court's decision, it seems that he says and cites to the record that there's a preponderance of the evidence introduced that the court finds that the bra top is designed to provide support to the bust of the wearer. So there you have your it's designed to provide support. And there's your essential characteristic. And I recall in the record, too, that when a person wears the bra top, they would not wear a bra underneath the bra top. That is true. Because the bra top is the bra. It's worn in lieu of a bra here. It would be much like wearing boxers and briefs. One wears this garment for its support purpose, wears it to support the bust. And the court found that, well, it's got these other uses. It's modesty and provides warmth. But that's not consistent with any article of clothing. But that is consistent with a bra. I mean, a bra by itself. And I think one of the exhibits was the plain bra that we typically know as a bra. It provides cover, modesty, and it provides warmth. Yes. I thought that there was evidence in this record that the shelf that the top includes is absolutely not as supportive as a normal brassiere. And that, therefore, only for an end user who doesn't need as much support would it satisfy both roles. And I thought there was actually record testimony to that effect. There may well be women who wear it in addition to a bra if it wouldn't have otherwise provided them with an equal amount of support and if they needed that support. I believe that was the government's expert testimony to that effect. But it is in the record. But it was not a finding of fact. And, in fact, the findings of fact in this case were to the contrary. That two well-known brassiere manufacturers, Wacol and Hanro, they provide the same amount of support in their what's known as a sleep bra or a soft brassiere. And so you can find the same level of support in brassieres that are sold commercially by well-known brassiere manufacturers. But, again, you know, this gets more to the factual findings of the court rather than the overall legal errors that we believe that the court made regarding edustem generis and expanding the heading of 6114 to include an article of support, which is in contradiction to note 2A, 2 Chapter 61. Is it your argument that the court relied on the more than doctrine in this decision? It is not our argument because that would be a TSUS thing. And I can see that I'm… Can I ask you a question? The government here did not appeal the, I guess, what I'm going to use, the tank top classification. Do you view that issue, either open in this case should we choose to reach it despite argument or, perhaps more importantly, open in future cases? Or are they bound forever after not to press the tank top classification, including in an importation by somebody other than the two opponents here? Well, I would certainly love if the government was bound forever to that, however you're on your note. Every importation stands on its own. So under Jarvis-Clark, the court will always have the duty to determine what the correct classification of a product is before it. That being said, this is a very important issue for both Victoria's Secret and Lerner New York because we have ongoing importations of this product. And so the court having found that 6109 is not the proper classification with which we agree, we would hope that the Federal Circuit would affirm on that classification and agree with that. Thank you, Ms. Hadfield. We'll save your remaining time for rebuttal. Ms. Farrell? Would you mind just starting with Judge Taranto's question about tank top and the tank top heading, the vest tank top t-shirt heading? The government dropped it on appeal, and I'm wondering whether that precludes us from looking at it. I don't know. Does it preclude the government from arguing that in the future with other imports of identical characteristics? Yes, Your Honor. May it please the court. I appreciate the question. We agreed upon during trial and also with additional information. We came to the conclusion that a tank top is a very specific type of article. And the article issue in this case, although the entry papers indicated that this was a tank with a built-in shelf bra, we believe that may have triggered people believing it was actually a tank top. Tank top is a very specific article of clothing where the shoulders are actually built into the body of the clothing. So we believed that this was, once we had that information and we had experts and we heard testimony, that it was not, in fact, a 6109 tank top. So we did not appeal that. We believe… In all those cases where you just didn't take it up to the solicitor to get permission to cross-appeal, this is a case in which you actually concluded that the lower court ended up reaching the right conclusion on it. That's correct, Your Honor. We came to the conclusion that the Victoria's Secret garment is essentially the same as the Lerner garment in the sense that it wasn't a tank top. In fact, we turned to the Dictionary of Fashion and there is a definition of tank top. If I may, Your Honor. It's similar to men's undershirt with U-neckline and deep armholes shaped toward shoulder to form narrow straps. So it actually is the body of the garment itself that then is knitted in such a fashion that it's shaped to turn into the shoulder straps and that's neither of the garments at issue in this case. So as we dove deeper into these issues, we came to the conclusion that the basic definition of a tank top was not the garment at issue here. I'm just for one second going to explore this. You realize that 6109, which covers t-shirts, vests, and tank tops, also has and other similar garments provision. I'm going to be honest with you. I am completely baffled by your argument. I don't see how these camisoles are not tank tops under at least the other similar garments provision because they look and they smell an awful lot like tank tops, a lot more than they do like bras to me. And so I am perplexed at you standing here concluding that they're not tank tops or otherwise you don't intend to ever think of them that way again. What about the other similar garments language? Why aren't they more like tank tops than they are brasiers? We think they're more like tops. We just don't think they're tank tops. We believe they're tops of 6109. What is it? Eonomony or whatever the word is. Tank tops. But you still have left open for yourself the ability to argue they fall into the t-shirt, tank top, vest category at least under the other similar garments in the future. In the future, depending on the garment, there's a possibility that that argument could be made. But these particular garments, the people who reviewed them came to the conclusion that they were more appropriately classified in 6114 because tank tops and similar articles seem to be different than what we were looking at with regards to these articles. In the sense that similar articles may also mean being built up the same way. Because it talks about singlets, a singlet which is essentially a tank top. Yeah. One piece. Right. So the wrestling type suit. Those tended to, they seem to us in similar articles, to be how they're designed. So that they're a continuous knitting. Here the shoulder straps are put on. They're not continuous knitting with the garment itself. And that is why my understanding is we have left the 6109 in similar articles. And it's possible that with another expert some day in the future that we'll learn and similar articles is not so restrictive. I don't want to waste your time on an argument you've obviously distanced yourself from. So the court made a finding of fact that the bra top is designed primarily to provide support. And they found that by preponderance of evidence. What other evidence is there that the bra top was designed for something other than support? Your Honor, I don't believe that the trial court made that finding. I believe the trial court made that finding with respect to what they call the shelf bra insert. Not the entire article. Well, I'm reading page 15 of the court's opinion. I don't have a citation to the record. I'm looking at the actual opinion. And this is in the Victoria's Secret case. And it's summary of principle findings of fact pertaining to support function of the bra top. And it says the court finds that the bra top is designed to provide support to the bust of the wearer. And it cites extensively to the record where that evidence may be found. So if there's a preponderance of evidence finding by the court, what evidence do you have? Or what evidence was submitted by the government that shows that the bra top was designed for something other than support? Your Honor, with respect to the findings of the bra top, if we go back to the specific findings, in calling the article the bra top, the Victoria's Secret garment a bra top, the court focused on the insert and said that if you take the problem here that you have is that this is a unified article. This is a hybrid. It's a new article. And the court is calling it by its name. It's calling it a bra top. But when it did its analysis, it concluded that the only portion of this singular article that provides support is the insert. But it's a singular article. I mean, an article as a whole. And I just read you where the court found that the bra top is designed to provide support to the bust. To the extent the court said that there, and then you look at it, because he talks about the fact that it is the only portion of the garment that is providing support is the insert. I don't understand that. If a portion of the whole garment does this thing, then the whole garment does this thing. It doesn't say that that's the primary support. There's no word primary in here. And at the critical juncture, back at what, pages 32 and 33, the point of the CIT's decision is that when you look at the thing as a whole, you cannot say that the function is the support. Italicize the, and on the next page, italicize as a whole. So there is, and tell me if I'm wrong, there's no finding, is there either way about which of the two functions of this obvious dual function garment is primary? The court said that the support was not the essential function. So while it did not affirmatively say one thing is or one thing isn't, it said that the support was not the essential function of the garment. Of the whole thing, because it does two things. Because the garment is a top. And it is a top that's intended to be worn. Indeed, it's sold that way. And Victoria's Secret sells it online as clothing. Not under the bra category, as the court acknowledged. Is there evidence about how Victoria's Secret displays it in its stores? I believe there was no testimony as to how it displays it in the stores, because I believe it was sold online only. I may be wrong about that. And then we talked briefly a few minutes ago about how there is this different fact in Lerner's, that Lerner's, I'm not going to get the words right, but classifies this as intimate apparel. Well, Lerner's floor plan in its store has a section, they call it the body shaper section or they call it the intimate section. That's true. But if we look at the way it was also sold online. And in the joint appendix for the Lerner case at 985 through 997, this is how Lerner sells this garment with respect to online sales, which apparently are for both companies a significant amount. I don't know specifically because there was no testimony specifically how much is sold online versus in a store, but clearly they're selling it online not as intimate apparel. They're selling it as part of a wardrobe, as part of your clothing that you're wearing. I don't remember. Did the CIT judge make any reference to or finding about that one piece of evidence about intimate apparel in the Lerner's case? I don't recall if it specifically did, but there was testimony. There absolutely was testimony at trial that in a store it's sold in a section that's called intimate apparel. And that section has brassieres. No, Lerner doesn't sell brassieres. So there are no brassieres in the Lerner floor. So what else? I believe they also sold panties with it, but they sold the body shaper online. And in their stores, they set it into the intimate section. I guess let me put the same question to you that I put to your opposing counsel. What I'm trying to figure out is an evening gown that is unequivocally designed to provide support, right? It would be very uncomfortable for me to think about that falling in the brassiere, garter, and suspender category. Even though the gown itself was designed and the portion of it that was designed to provide support has no other potential function. I mean, it is designed whether it's with a shelf or with cups or whatever. So I guess I am in my brain thinking about is the question that this boils down to, what is the primary characteristic of the garment as a whole, as opposed to what are individual elements of the garment designed for? Is that the right way that you think I ought to be thinking about this? Yes, Your Honor. I believe that is exactly the correct way to be looking at this. Because if not, then a pair of jeans that has a tummy tuck that holds in your stomach, which may be… It's now a corset. It's now a corset, and it now falls into 6212. When we look at the exemplars of 6212… But let's go back to that example. And your opposing counsel answered that question about the evening gown by saying, well, there's other essential characteristics of the evening gown. It's an evening gown. It's a dress. It goes all the way down to the floor. And that characteristic can be said to be inconsistent with just a bra. Yes, Your Honor. Or the other way to look at it as well. I mean, this garment, this garment is a top. There is no question it's a top. It is sold as a top. And to the extent Lerner sells it in its intimate apparel section, there's testimony from Lerner's witness at trial that it is designed as a top and that it has a support feature built in. So the question becomes, in 6114, what would those categories of other garments… Is there anything about the presence of this insert shelf bra that would remove it from 6114? Because we're looking at these two headings together. 6212… The problem I'm having, the one problem I'm having, I understand your argument. And I think that it is a logical way for me to frame in my mind how to think about the primary functionality or characteristic, essential characteristic versus additional features. I get that. The problem is these fact findings are a little bit confusing to me because he says support. He concludes that support is not the essential characteristic of the garment. But then when you read the rest of the opinion, it's like he said, I don't find him saying coverage is the essential part. I don't find him saying there is a different thing. Like in an evening gown, everyone in this room is going to agree it's much more a dress than it is a brassiere. The problem is you all are disagreeing whether this top is much more a top than it is a brassiere or much more a brassiere than it is a top. And the problem I have is his fact findings don't track either of you particularly well, to be honest with you, because he doesn't say no, it's more a top than it is a support function. So the problem I'm having is how do I… Because I think he may well have, as Judge Serrano said, although I don't think it's crystal clear, have sort of decided it was a dual function item and each purpose was of equal weight in terms of there wasn't a primacy or essentiality. Both are essential to this device or this garment. I don't know. So how do I reconcile all of that? Right. It is unclear in the opinion whether or not the court did do exactly as Your Honor has indicated, balancing. The court did conclude that the support feature wasn't the essential feature. But analysis… I'm sorry, what did you say? That it was? That it was not the essential component. Which doesn't mean that the other one is the essential either. Correct. It could be that neither one is the essential. There's no affirmative statement. He found that it was a essential characteristic. And that characteristic, the court said, is consistent with the characteristics of the brassiere. Then didn't he go on and say, but there's two other characteristics, warmth and modesty. Right. And warmth and modesty, the coverage of the garment itself. He also did not find that those were the essential characteristics. He just said they're also characteristics or uses of the top. And I don't know, Your Honor, that we need to find the essential characteristic of the top. Because if we look at Heading 6212, we see that the articles of Heading 6212 are articles that in and of themselves, in their entirety, provide support. What we have here is a garment that the only portion providing support is the insert, the outer portion of the garment. And these garments cannot… It's only one garment. It's a unified garment. It's a unified garment. But the outer portion of the garment does not provide support. So if you… Wasn't there evidence that the entire garment provided support? No, Your Honor, there isn't. The only evidence is that the shelf bra portion of… To the bust. Yes. But the entire garment provided support to the upper body. There's no testimony to the garment providing support to the upper body. The only testimony about support is support of shaping and molding and supporting the breasts. And that the garment, the body shaper garment, which is the learner garment, there was testimony from their witness that the way that that garment is designed, it causes a sleekness in the body, but it wasn't that it was providing support to the body. It wasn't acting as though it were a corset. The portion of the garment that is outside and unattached, other than at the top,  I believe Your Honors may have seen the sample. So I know on the record it sounds pretty indescript, but if you've seen the article and you've seen the pictures, there is an insert in the inside. It is the outer portion that does not provide any support. So if we look at this garment in toto, as a whole, which we are charged to do when we classify anything that's imported into the United States, is to look at it as a whole. In fact, the court found the bra top is an outer garment whose outer camisole shell does not provide any body support, but conceals the shelf bra. Correct. And so there's no testimony that the garment itself, other than the shelf bra insert, is providing support. Help me. Did he say anywhere what was an essential characteristic? We know he said what wasn't the essential characteristic. I don't believe he did, Your Honors. Did he say anywhere, support, coverage, and modesty are the essential characteristics of this good? I don't believe he articulated it that way. I believe he articulated that those are factors of the good. But these are, you know. Aspects. Right. But the only thing I recall is that he said support was not the essential. So we know at a minimum. But he didn't say, just to be clear, he didn't say support was an essential characteristic? He said it was not the essential characteristic. But did he say it was an essential? Did he say support is an essential characteristic somewhere? An, I don't. Of the category, not of the merchandise. Of the items listed in the. No, I meant with regard to the merchandise. I guess I was confused because there was some communication back and forth, and I was wondering if I missed something. He said support is not the essential characteristic. Did he somewhere, because Judge Rayna asked you, but he said it's an essential characteristic, and I thought you said yes. And so I was suddenly concerned that I had missed some section of the opinion wherein he had actually made a fact finding that support is an essential characteristic of the imported garment. It may have been that I misunderstood or misheard either his question or your answer, but I was sitting here for a few minutes reeling, thinking, did he say support, modesty, and coverage are all essential characteristics as opposed to did you just say these are factors? And I wanted you to be clear on the record so that I didn't misunderstand you. I'm not aware that he said in the record that they were an essential characteristic. I believe Judge Rayna was asking whether the court had said that the RATA provides support. And I said yes, but just to clarify the record. The portion of the record that I read to you is the summary of principal findings of fact pertaining to the support function of the broad top. And according to the court, the parties agreed in a joint pretrial order as well as a preponderance, and the court says as well as a preponderance of the evidence introduced at record trial, the court finds that a broad top is designed to provide support to the bust of the wearer. If a top is designed for a specific purpose, how can it be said that that's not an essential element of the article? It's not that it was designed to be a specific purpose. It was found that it was designed to provide. To support. So not a specific purpose, not a primary purpose, but that it does provide support. Because part of the design of the broad top is the insert, and the insert is the portion that provides support. But the broad top, if we're classifying. He's not referring to just the insert. He's referring to the broad top, the entire article. Right. But the testimony, if we go back through the factual findings, this is a summary. If we go back to the factual findings, the point that the court finds is that only, it is only the insert that actually provides support. Let me ask you a different way. Did the government agree, as stipulated in the pretrial order, that the broad top is designed to provide support to the bust of the wearer? We agreed that the shelf bra was designed, and the shelf bra is a specific portion of it, but not the entire garment. 6212 is, in a just and generous analysis of 6212, reveals that each article in that list is one that provides support. It is the entire article doing the provision of support, not a portion of the article. So when you look at that list of articles that is there, what is the unifying factor is that the entire article provides support. Here you have a top who has a portion, a feature, that provides support. But the outer shell does not provide support. So the question becomes now, if we're going to classify this, everyone agrees it's a top. It's sold as a top. No question it's a top. So now the question becomes, does the presence of a supportive feature, which is the shelf bra component of this article, does that presence remove it from the court's classification in 6114, which is other garments? Included in other garments are tops, as we have in our brief. These are called camisole tops. The expert, Ms. Armias, explained these are shelf top camis. So this is a camisole top, which we believe is properly classifiable in 6114. So does the presence of that support feature remove it? No, indeed it does not, because the plain definition of a camisole top includes that it will include a built-in bra. So clearly, if it includes a built-in bra, it has support. So there is an article in the world, in the fashion world. Okay, I think we're over and we need to move along. I thank you, Ms. Farrell, for your argument. Ms. Hadfield, you have some rebuttal time. Ms. Farrell went over by two minutes, so if you need two additional minutes, why don't you give her the four minutes on the clock. Thank you. Your Honor, I want to point briefly to two findings of fact by the court. The body shaper cannot be separated into two independently functioning garments because the straps would have to be used for both garments. And point number six, the body shaper's cup, underbust band, and the straps all work together to provide support to the wearer's bust. I think this goes back to this garment has to be a unified whole. When we look at the summary of the findings of fact by the court, the whole garment has to be looked at, rather than trying to parse and piece this in a way that the findings of fact cannot do, and the court found that you cannot do. The straps can't be separated. This goes to the outer portion of the garment. This goes to the shelf bra. So we have to look at the central characteristic of this garment is support. And so we have two competing provisions, other garments knitted or crocheted, and then a very specific support provision, in which in order to be classified on that provision, you have to have a functionality or a use that is more specific. So in comparing the two of those, does it fall into a residual provision where we have a note that specifically excludes the support function, such as a brassiere, or does it fall into the more specific provision where we have support as an essential characteristic? I like the government. I understand your argument as well. The problem is these fact findings for me. The CIT judge here held the larger of the two components, the camisole shell is entirely dissimilar to a brassiere and does not perform any bodily support function. Well, that would be contrary to... That's his fact finding. I'm reading from his opinion. That would be inconsistent with the testimony that compression along the torso is giving a slimming appearance to the body. So you had compression in the body shape of the garment. But you had also testimony the other way. So I'm not going to overturn his fact finding. Sure. Absolutely. So how do I reconcile this fact finding, which I'm not going to overturn, with your argument about why the overall garment ought to be classified as a supporting garment? Because it is similar. Because we did find that support functionality. Because similar articles in Chapter 6212 has to be something dissimilar, but maintaining the function that runs throughout the heading. And that's what a justum generis means at its very bottom. We're not asking to be a brassiere. We're asking to be similar to the articles in there. And there's no findings of fact that would take us out of that. There are no inconsistent, more specific purposes to this garment. So I guess Ty goes to the runner kind of thing. Absolutely. The more specific heading. So your argument would be if he had made the fact finding that the essential characteristic of this garment is coverage, that it has the additional functionality of offering a shelf bra, kind of like the evening gown example I gave you. We both agree that an evening gown is not probably going to be classified there, even though a portion of it might be designed to act as the brassiere itself. And so is your argument that in this case, though, if we decide these things are equal, that we have to put it into the brassiere category? Well, that would be a finding of fact, Your Honor. And we're not asking this court to make a finding of fact. But the only finding of fact we have from him is support is not the essential characteristic. I can't figure out anything else in terms of finding of fact other than that. So if I conclude the essential characteristic of everything in that heading is support, and then I look here and the essential characteristic of this device is not support, you lose. If that was the Adjustum Generis analysis, but that's not what Adjustum Generis requires. It just requires that you find the function that runs through the heading. We don't have to find that it's the essential characteristic. No, no, no, no, no, no, no. That goes completely against our entire discussion about the evening gown, where I thought that we were on all fours, which was that an evening gown that happens to have a function that serves as a brassiere doesn't suddenly put it into the brassiere category because its primary function is otherwise. It's an AO nominee dress, no doubt. It would be classified AO nominee in Chapter 61 as a brassiere. It would be in the other knitted articles before it would be in the brassiere category. I'd have to see an example, Your Honor, but honestly, a dress is classified AO nominee in Chapter 61. Any fact finding by the district court that would find a co-equal or non-subordinate characteristics, that's exactly the more than doctrine that this court has overruled, isn't it? If they found a more than? Co-equal. There was no co-equal finding. That would be a TSUS argument. We don't have that. We have very specific findings regarding support, and that the whole garment does provide support. Not what he found. You can't say the whole garment provides support when he found the opposite. Not to be frustrating, Your Honor. I was just going back to Judge Reina's finding regarding the summary, where he does summarize it in that fashion. In conclusion, we just believe that this garment as a whole provides a support function, is a justum generis with the articles heading 62-12, and should have been classified accordingly there. I thank both counsel for your argument. You were both extremely helpful to the court. Thank you very much.